BOWMAN, Circuit Judge.
We have before us in this appeal the novel question whether the person currently serving as President of the United States is entitled to immunity from civil liability for his unofficial acts, ie., for acts committed by him in his personal capacity rather than in his capacity as President. William Jefferson Clinton, who here is sued personally, and not as President, appeals from the District Court’s decision staying trial proceedings, for the duration of his presidency, on claims brought against him by Paula Corbin Jones. He argues that the court instead should have dismissed Mrs. Jones’s suit without prejudice to the refiling of her suit when he no longer is President. Mr. Clinton also challenges the District Court’s decision to allow discovery to proceed in the case during the stay of the trial. Mrs. Jones cross-appeals, seeking to have the stays entered by the District Court lifted, so that she might proceed to trial on her claims.[1] We affirm in part and reverse in part, and remand to the District Court.[2]
*1357 On May 6, 1994, Mrs. Jones filed suit in the District Court against Mr. Clinton and Danny Ferguson, an Arkansas State Trooper who was assigned to Mr. Clinton’s security detail during his tenure as governor of Arkansas, for actions alleged to have occurred beginning with an incident in a Little Rock, Arkansas, hotel suite on May 8, 1991, when Mr. Clinton was governor and Mrs. Jones was a state employee. Pursuant to 42 U.S.C. § 1983 (1988), Mrs. Jones alleges that Mr. Clinton, under color of state law, violated her constitutional rights to equal protection and due process by sexually harassing and assaulting her. She further alleges that Mr. Clinton and Trooper Ferguson conspired to violate those rights, a claim she brings under 42 U.S.C. § 1985 (1988). Her complaint also includes two supplemental state law claims, one against Mr. Clinton for intentional infliction of emotional distress and the other against both Mr. Clinton and Trooper Ferguson for defamation.
Mr. Clinton, asserting a claim of immunity from civil suit, filed a motion to dismiss the complaint without prejudice to its refiling when he is no longer President or, in the alternative, for a stay of the proceedings for so long as he is President. On December 28, 1994, the District Court, rejecting the application of absolute immunity, denied Mr. Clinton’s motion to dismiss the complaint. The court did find, however, that for separation of powers reasons Mr. Clinton was entitled to a “temporary or limited immunity from trial,”[3] and thus granted his request to stay the trial for the duration of Mr. Clinton’s service as President. Jones v. Clinton, 869 F.Supp. 690, 699 (E.D.Ark.1994). Concluding that the claims against Trooper Ferguson are factually and legally intertwined with the claims against Mr. Clinton, the court also stayed the trial against Trooper Ferguson for as long as Mr. Clinton is President, but permitted discovery on Mrs. Jones’s claims against both Mr. Clinton and Trooper Ferguson to go forward. On appeal, Mr. Clinton seeks reversal of the District Court’s rejection of his motion to dismiss the complaint on the ground of presidential immunity and asks us to order that court to dismiss Mrs. Jones’s action in its entirety, without prejudice. In the alternative, he asks this Court to reverse the decision denying his motion to stay discovery. Mrs. Jones cross-appeals the District Court’s decision to stay the trial of her claims against both Mr. Clinton and Trooper Ferguson.[4]
Mr. Clinton argues that this suit should be dismissed solely because of his status as President. The immunity he seeks would protect him for as long as he is President, but would expire when his presidency has been completed. The question before us, then, is whether the President is entitled to immunity, for as long as he is President, from civil suits alleging actionable behavior by him in his private capacity rather than in *1358 his official capacity as President. We hold that he is not.
We start with the truism that Article II of the Constitution, which vests the executive power of the federal government in the President, did not create a monarchy: The President is cloaked with none of the attributes of sovereign immunity. To the contrary, the President, like all other government officials, is subject to the same laws that apply to all other members of our society. As the Supreme Court has observed, “Our system of jurisprudence rests on the assumption thát all individuals, whatever their position in government, are subject to federal law....” Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). Nevertheless, mindful that for the sake of the nation’s general good the Constitution empowers officials to act within the scope of their official responsibilities,.the Supreme Court has recognized “that there are some officials whose special functions require a full exemption from liability” for their performance of official acts. Id. at 508, 98 S.Ct. at 2911. The list of those entitled to absolute immunity from civil liability includes the President of the United States for his official acts, Nixon v. Fitzgerald, 457 U.S. 731, 756, 102 S.Ct. 2690, 2704, 73 L.Ed.2d 349 (1982); members of Congress for their legislative acts, regardless of motive, under the Speech and Debate Clause, U.S. Const. art. I, § 6, Dombrowski v. Eastland, 387 U.S. 82, 84-85, 87 S.Ct. 1425, 1427-28, 18 L.Ed.2d 577 (1967) (per curiam); Tenney v. Brandhove, 341 U.S. 367, 372, 377, 71 S.Ct. 783, 786, 788, 95 L.Ed. 1019 (1951); judges in courts of general jurisdiction for judicial acts, Stump v. Sparkman, 435 U.S. 349, 359-60, 98 S.Ct. 1099, 1106-07, 55 L.Ed.2d 331 (1978); Pier-son v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); prosecutors for prosecutorial functions, Imbler v. Pachtman, 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976); and certain executive officials performing certain judicial and prosecutorial functions in their official capacities, Butz, 438 U.S. at 514-15, 98 S.Ct. at 2914-15. In addition, witnesses are entitled to absolute immunity from civil suit for testimony given in judicial proceedings, Briscoe v. LaHue, 460 U.S. 325, 334, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983), and even government officials whose special functions do not require a full exemption from liability may have a more limited qualified immunity for their official acts, e.g., Procunier v. Navarette, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978) (prison officials); Wood v. Strickland, 420 U.S. 308, 321-22, 95 S.Ct. 992, 1000-01, 43 L.Ed.2d 214 (1975) (school officials); Scheuer v. Rhodes, 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974) (officers of the Executive Branch); Pierson, 386 U.S. at 557, 87 S.Ct. at 1219 (police officers making an arrest). We are unaware, however, of any case in which any public official ever has been granted any immunity from suit for his unofficial acts, and neither the Supreme Court nor any other court, the District Court excepted, appears to have addressed the precise issue before us today: whether the President is entitled to immunity for the duration of his presidency when sued for his unofficial actions.
The immunity that has been found for official acts is not the product of a prudential doctrine created by the courts and is not to be granted as a matter of judicial largesse. Cf. Imbler, 424 U.S. at 421, 96 S.Ct. at 990-91 (“[O]ur earlier decisions on § 1983 immunities were not products of judicial fiat that officials in different branches of government are differently amenable to suit under § 1983.”). Rather, the question whether to grant immunity to a government official is “guided by the Constitution, federal statutes, and history” and is informed by public policy. Fitzgerald, 457 U.S. at 747, 102 S.Ct. at 2700. “In the case of the President the inquiries into history and policy ... tend to converge. Because the Presidency did not exist through most of the development of common law, any historical analysis must draw its evidence primarily from our constitutional heritage and structure.” Id. at 748, 102 S.Ct. at 2700. Thus the historical “inquiry involves policies and principles that may be considered implicit in the nature of the President’s office in a system structured to achieve effective government under a constitutionally mandated separation of powers.” Id.
There is no suggestion in this case that federal legislation is the source of either the *1359 immunity Mr. Clinton seeks or an abrogation of a previously declared presidential immunity. Cf. id. at 748 n. 27, 102 S.Ct. at 2700 n. 27 (noting that the causes of action in the case were “implied” in the Constitution and federal law, and therefore declining to “address directly the immunity question as it would arise if Congress expressly had created a damages action against the President” for his official acts). Nor is presidential immunity of any kind explicit in the text of the Constitution. Instead, whatever immunity the President enjoys flows by implication from the separation of powers doctrine, which itself is not mentioned in the Constitution, but is reflected in the division of powers among the three branches. See U.S. Const. arts. I, II, III. The Supreme Court in Fitzgerald, after an exhaustive examination of the history and the constitutional significance of the presidency, held that absolute immunity from civil liability for official acts is “a functionally mandated incident of the President’s unique office, rooted in the constitutional tradition of separation of powers and supported by our history.” 457 U.S. at 749, 102 S.Ct. at 2701. There is a “special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers.” Id. at 743, 102 S.Ct. at 2698.
The parties agree, and so do we, that the fundamental authority on the subject of presidential immunity is the plurality opinion in Fitzgerald. As noted above, the issue before the Court in that case was whether the President is entitled to absolute immunity (rather than qualified immunity or no immunity at all) from personal civil liability for his official acts. By only a five-to-four majority, the Court held that, “[i]n view of thd special nature of the President’s constitutional office and functions, we think it appropriate to recognize absolute Presidential immunity from damages liability for acts within the ‘outer perimeter’ of his official responsibility.” Id. at 756, 102 S.Ct. at 2704. By definition, unofficial acts are not within the perimeter of the President’s official responsibility at all, even the outer perimeter.[5] The Court’s struggle in Fitzgerald to establish presidential immunity for acts within the outer perimeter of official responsibility belies the notion, here advanced by Mr. Clinton, that beyond this outer perimeter there is still more immunity waiting to be discovered. We thus are unable to read Fitzgerald as' support for the proposition that the separation of powers doctrine provides immunity for the individual who serves as President from lawsuits seeking to hold him accountable for his unofficial actions. See id. at 759, 102 S.Ct. at 2706 (Burger, C.J., concurring) (“a President, like Members of Congress, judges, prosecutors, or congressional aides— all having absolute immunity — [is] not immune for acts outside official duties”).[6] Moreover, having considered the arguments put forward in the present ease, we cannot discern any reason grounded in the Constitution for extending presidential immunity beyond the outer perimeter delineated in Fitzgerald. Accordingly, we hold that a sitting President is not immune from suit for his unofficial acts. In this case it is undisputed that most of the acts alleged by Mrs. Jones clearly fall outside the zone of official presidential responsibility, given that they occurred while Mr. Clinton was still governor of Arkansas.[7]
Stressing that the immunity claimed here is only temporary (until the end *1360 of Mr. Clinton’s presidency), Mr. Clinton and his amici would have us consider the nature of Mrs. Jones’s complaint, as well as the timing of the filing of her suit (apparently just within the statute of limitations), and conclude that her suit is neither important nor urgent, and certainly not consequential enough to trump Mr. Clinton’s claim to temporal immunity from suit. But that is not the test. Mrs. Jones is constitutionally entitled to access to the courts and to the equal protection of the laws. “The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803). Mrs. Jones retains that right in her suit against Mr. Clinton, regardless of what her claims may be or when her suit was filed (if otherwise timely filed), provided that she is not challenging actions that fall within the ambit of official presidential responsibility. We further reject the suggestion that Mrs. Jones’s motives in filing suit, alleged to be political, should be examined, and that her suit should be dismissed if we are persuaded that her objective in bringing the suit is less than pure. Such an approach would convert a presidential immunity analysis into the taking and weighing of accusations and recriminations, an exercise unnecessary and inappropriate to the proper determination of a claim of immunity based on the Constitution.
Mr. Clinton argues that, if he is presently amenable to suit for his private acts, the proceedings against him inevitably will intrude upon the office of President, in contravention of Fitzgerald’s teachings, noting the Court’s concern that the “diversion of [the President’s] energies by concern with private lawsuits would raise unique risks to the effective functioning of government.” 457 U.S. at 751, 102 S.Ct. at 2702. Thus, Mr. Clinton would have us ignore the line that Fitzgerald draws between official and unofficial acts and instead “balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch,” the analysis undertaken by the Court in reaching its decision on the question of presidential immunity for official acts. Id. at 754, 102 S.Ct. at 2703. But the Court in Fitzgerald was troubled by the potential impact of private civil suits arising out of the President’s performance of his official duties on the future performance of those duties, not by whether the President qua individual citizen would have the time to be a defendant in a lawsuit. As the Court explained, “[A] President must concern himself with matters likely to ‘arouse the most intense feelings,’ ” and “it is in precisely such cases that there exists the greatest public interest in providing an official ‘the maximum ability to deal fearlessly and impartially with’ the duties of his office.” Id. at 752, 102 S.Ct. at 2702 (citations to quoted cases omitted). It is clear from a careful reading of Fitzgerald that the justification for the absolute immunity conferred in that case was concern that the President’s awareness of his essentially infinite potential personal liability for virtually every official action he takes would have an adverse influence on the presidential decision-making process. The rationale of the Fitzgerald majority is that, without protection from civil liability for his official acts, the President would make (or refrain from making) official decisions, not in the best interests of the nation, but in an effort to avoid lawsuits and personal liability. This rationale is inapposite where only personal, private conduct by a President is at issue.
Mrs. Jones’s claims, except for her defamation claim,[8] concern actions by Mr. Clinton that, beyond cavil, are unrelated to his duties as President. This lawsuit thus does not implicate presidential decision-making. If this suit goes forward, the President still will be able to carry out his duties without any concern that he might be sued for damages by a constituent aggrieved by some official presidential act. Though amenable to suit for his private acts, the President retains the absolute immunity found in Fitzgerald for official acts, and presidential decision-making will not be impaired. “In defining the scope of an official’s absolute privilege, ... the sphere of protected action must be related closely to the immunity’s justifying purposes.” Id. at 755, 102 S.Ct. at *1361 2704. We see no connection, much less a close one, between the unofficial actions Mr. Clinton wishes to shield from judicial process and the justifying purposes of presidential immunity as set forth by the Court in Fitzgerald.
Mr. Clinton argues that denying his claim to immunity will give the judiciary carte blanche to intrude unconstitutionally upon the Executive Branch and in fact will disrupt the performance of his presidential duties and responsibilities. As the argument goes, because a federal court will control the litigation, the Third Branch necessarily will interfere with the Executive Branch through the court’s scheduling orders and its powers to issue contempt citations and sanctions. But Mr. Clinton’s sweeping claim that this suit will allow the judiciary to interfere with the constitutionally assigned duties of the Executive Branch, and thus will violate the constitutional separation of powers doctrine if immunity is not granted, without detailing any specific responsibilities or explaining how or the degree to which they are affected by the suit (and, unlike the dissent, post at 1369, 1370 we think it is Mr. Clinton’s burden to do so), is insufficient ground for granting presidential immunity, even temporarily. See Butz, 438 U.S. at 506, 98 S.Ct. at 2910 (“[Fjederal officials who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope.”); cf. United States v. Nixon, 418 U.S. 683, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039 (1974) (holding no presidential privilege attaches to presidential communications subpoenaed in criminal case when asserted privilege “is based only on the generalized interest in confidentiality”). We reject Mr. Clinton’s argument, and instead focus our attention on the true separation of powers issues, which we already have discussed, upon which the question of presidential immunity hinges.
“[T]he Constitution by no means contemplates total separation of each of [the] three essential branches of Government.” Buckley v. Valeo, 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976) (per curiam). Under the checks and balances provided for in the Constitution, all branches have the capacity to intrude in some way upon the province of the other branches. But under the Constitution, and because of those same cheeks and balances, no one branch may intrude upon another to such an extent that the threatened branch is rendered incapable of performing its constitutionally assigned duties. See id. at 122, 96 S.Ct. at 683-84 (“The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.”). What is needed, we believe, to avoid a separation of powers problem is not immunity from suit for unofficial actions, an immunity that would accord the President a degree of protection from suit for his private wrongs enjoyed by no other public official (much less ordinary citizens), but judicial case management sensitive to the burdens of the presidency and the demands of the President’s schedule. The trial court has broad discretion to control the scheduling of events in matters on its docket.[9] We have every confidence that the District Court will exercise its discretion in such a way that this lawsuit may move forward with the reasonable dispatch that is desirable in all cases, without creating scheduling conflicts that would thwart the President’s performance of his official duties.
The unfettered filing of numerous vexatious or frivolous civil lawsuits against sitting Presidents for their unofficial acts that Mr. Clinton and the dissenting opinion in this case envision if Mr. Clinton is not granted temporal immunity from Mrs. Jones’s lawsuit is not only speculative, but historically unsupported. To date no court *1362 ever has held that an incumbent President has any immunity from suit for his unofficial actions. Although our Presidents never have been recognized as having any immunity from lawsuits seeking remedies for civil liabilities allegedly incurred by them in their personal dealings, it would appear that few such lawsuits have been filed.[10]
While the President himself and his official conduct inevitably have the high visibility that concerned the Court in Fitzgerald, 457 U.S. at 753, 102 S.Ct. at 2703 (noting “the visibility of [the President’s] office and the effect of his actions on countless people” as setting him up as “an easily identifiable target for suits for civil damages”), his unofficial, private conduct is on a different footing. Although such conduct may attract widespread attention when someone elects to make it public, the unofficial acts of the person who serves as President, unlike the President’s official acts, are not likely to affect “countless people.” Rather, unofficial conduct will affect only those who traffic with the President in his personal capacity. Thus the universe of potential plaintiffs who might seek to hold the President accountable for his alleged private wrongs via a civil lawsuit is considerably smaller than the universe of potential plaintiffs who might seek- to hold the President accountable for his official conduct; in the latter case, the plaintiff could be virtually anyone who feels aggrieved by presidential action. If, contrary to history and all reasonable expectations, a President ever becomes so burdened by private-wrong lawsuits that his attention to them would hinder him in carrying out the duties of his office, then clearly the courts would be duty-bound to exercise their discretion to control scheduling and the like so as to protect the President’s ability to fulfill his constitutional responsibilities. Frivolous claims, a category with which the courts are quite familiar, generally can be handled expeditiously and ordinarily can be terminated with little or no involvement by the person sued.
Finally, we reject the notion that presidential immunity in civil cases seeking a remedy for unofficial acts can be conferred on an ad hoc basis. There is no constitutional basis for the proposition that a court, in its discretion, could refuse to grant immunity to a President in, for example, suits for arrearages in child support or the case of the “more urgent need” of a plaintiff seeking injunctive relief, Appellant’s Reply Brief at 21 n. 14, or of a plaintiff who shows ■ exigent circumstances, while granting immunity from suits for declaratory relief or money damages where the plaintiff demonstrates no exigency. A sitting President is either entitled to immunity from suit for his unofficial acts, or he is not. As we have noted, presidential immunity is not a prudential doctrine fashioned by the courts. Mr. Clinton is entitled to immunity, if at all, only because the Constitution ordains it. Presidential immunity thus cannot be granted or denied by the courts as an exercise of discretion. The discretion of the courts in suits such as this one comes into play, not in deciding on a case-by-case basis whether a civil complaint alleging private wrongs is sufficiently compelling so as to be permitted to proceed with an incumbent President as defendant, but in controlling the scheduling of the case as necessary to avoid interference with specific, particularized, clearly articulated presidential duties. If the trial preliminaries or the trial itself become barriers to the effective performance of his *1363 official duties, Mr. Clinton’s remedy is to pursue motions for rescheduling, additional time, or continuances. Again, we have every confidence that the District Court will discharge its responsibility to protect the President’s role as our government’s chief executive officer, without impeding Mrs. Jones’s right to have her claims heard without undue delay. If either party believes the court is failing to discharge that responsibility, the proper course is to petition this Court for a writ of mandamus or prohibition.
To sum up, we hold that the Constitution does not confer upon an incumbent President any immunity from civil actions that arise from his unofficial acts. Accordingly, we affirm the District Court’s decision denying Mr. Clinton’s motion to dismiss Mrs. Jones’s suit and the decision to allow discovery in this ease to proceed. For the same reason, we reverse the District Court’s order granting Mr. Clinton’s motion to stay the trial of this matter for the duration of his presidency. Mrs. Jones’s appeal of the District Court’s post-judgment order staying discovery during the pendency of this appeal is dismissed as moot, as is Mr. Clinton’s challenge to our jurisdiction to hear that appeal. The ease is remanded to the District Court, with instructions to lift the stays that the court has entered and to allow Mrs. Jones’s suit against Mr. Clinton and Trooper Ferguson to proceed in a manner consistent with this opinion and the Federal Rules of Civil Procedure.

. In addition to staying the trial on Mrs. Jones's claims against Mr. Clinton, the District Court also stayed trial against Mr. Clinton's co-defendant in the suit, Arkansas State Trooper Danny Ferguson.

. In addition to the briefs of the parties, amicus briefs have been filed in support of Mr. Clinton by the United States and by a group of law professors including Professors Amar, Bloch, Bruff, Estrich, Fallon, Jr., Farber, Frickey, Gew-irtz, Gunther, Jeffries, Jr., Levinson, Marshall, *1357 Resnik, Sherry, Shiffrin, Sullivan, and Tribe; and in support of Mrs. Jones by The American Civil Liberties Union Foundation and by a group of law professors including Professors Burbank, Cohen, Kramer, Merritt, Miller, Nagel, Parker, Powe, Jr., Presser, Rotunda, and Van Alstyne.

. The District Court also justified the stay on the basis of its authority under Rule 40 of the Federal Rules of Civil Procedure and "the equity powers of the Court.” Jones v. Clinton, 869 F.Supp. 690, 699 (E.D.Ark.1994).

. Mr. Clinton argues that we do not have jurisdiction to hear Mrs. Jones's cross-appeal from the orders staying the trial, as they are non-final, interlocutory orders. We conclude, however, that Mrs. Jones’s cross-appeal is "inextricably intertwined” with Mr. Clinton's appeal, which is before us under the immunity exception to the general rule that only final judgments are appeal-able. See Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 2814-15, 86 L.Ed.2d 411 (1985). Thus the orders staying trial are presently ap-pealable under our "pendent appellate jurisdiction.” See Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 394 (8th Cir.1995) (analyzing Swint v. Chambers County Commission, - U.S. -, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), and concluding that pendent appellate jurisdiction remains a viable concept in the Eighth Circuit). All issues raised in the appeal and the cross-appeal (with the exception of those portions of the orders concerning the defamation claim against Mr. Clinton, see infra note 7) — the challenges to the non-dismissal of the suit, to the stays of trial, and to the allowance of discovery— are resolved by answering one question: is a sitting President entitled to immunily, for the duration of his presidency, from civil suit for his unofficial acts? It is difficult to imagine issues more "intertwined" than these, where answering one question of law resolves them all.

. We note that the dissenting opinion in the present case does not mention Fitzgerald's “outer perimeter,” much less explain how unofficial acts could come within the protected zone.

. The dissenting opinion, while liberally citing and quoting Chief Justice Burger’s concurrence, post at 1367-68, 1369, does not mention that the Chief Justice expressly stated that the President is "not immune for acts outside official duties.”

. Mrs. Jones's state law defamation claim concerns actions alleged to have been taken by Mr. Clinton’s presidential press secretary while Mr. Clinton was President. The question whether these actions fall inside the " ‘outer perimeter’ of [the President's] official responsibility,” Nixon v. Fitzgerald, 457 U.S. 731, 756, 102 S.Ct. 2690, 2704, 73 L.Ed.2d 349 (1982), so as to come within the scope of the President’s absolute immunity for official acts, is not free from doubt. This particular issue has not been addressed by the District Court, and the record as to the circumstances of the press secretary’s statements is not fully developed. We therefore leave this issue for initial resolution by the District Court after remand and upon a more complete record.

. See supra note 7.

. Notwithstanding the District Court's broad discretion in matters concerning its own docket, the alternative rationale for the stays the court granted — its power under Federal Rule of Civil Procedure 40 and “the equity powers of the Court," Jones v. Clinton, 869 F.Supp. at 699—attempts to justify orders that we consider an abuse of discretion. Such an order, delaying the trial until Mr. Clinton is no longer President, is the functional equivalent of a grant of temporary immunity to which, as we hold today, Mr. Clinton is not constitutionally entitled.

. The parties have identified only three prior instances in which sitting Presidents have been involved in litigation concerning their acts outside official presidential duties. See also Jones v. Clinton, 869 F.Supp. at 697. Those suits were against Theodore Roosevelt, Harry S Truman, and John F. Kennedy. In each case, the action was filed before the defendant began serving as President, and the suits against Presidents Roosevelt and Truman were already on appeal before those men assumed the office of President. People ex rel. Hurley v. Roosevelt, 179 N.Y. 544, 71 N.E. 1137 (1904) (per curiam mem.); DeVault v. Truman, 354 Mo. 1193, 194 S.W.2d 29 (1946). It does not appear that either Mr. Roosevelt or Mr. Truman claimed any immunity from suit. In the action against Mr. Kennedy, he asserted, post-election, that he was temporarily protected from suit under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. app. §§ 501-93 (1988 & Supp. V 1993), given his status as Commander-in-Chief. The court denied Mr. Kennedy's motion for a stay, apparently without a written opinion, and the case eventually settled. Bailey v. Kennedy, No. 757,200 (Cal.Super.Ct.1962); Hills v. Kennedy, No. 757,-201 (Cal.Super.Ct.1962).